**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 12-CV-03057 (VEB)

LISA NICHOLS,

                        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.

REPORT AND RECOMMENDATION

## I. INTRODUCTION

In July of 2008, Plaintiff Lisa Nichols applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social

Security Act, alleging disability due to physical and psychological impairments. The Commissioner of Social Security denied the applications.

Plaintiff, represented by the Law Office of D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 23, 2013, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 27).

## II. BACKGROUND

The procedural history may be summarized as follows:

On July 21, 2008, Plaintiff applied for SSI benefits and DIB, alleging disability beginning February 1, 2000. (T at 181-83, 184-87).[1]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On September 15, 2010, a hearing was held in Yakima, Washington before ALJ Marie Palachuk. (T at 51).  Plaintiff appeared with an attorney and testified. (T at 75-91). Miriam F. Martin, a psychological expert, testified.  (T at 57-

---

[1] Citations to ("T") refer to the administrative record at Docket Nos. 10-15.

74).  The ALJ also received testimony from Deborah Nelson Lapoint, a vocational expert. (T at 91-97).

On November 2, 2010, the ALJ issued a written decision denying the applications for benefits and finding that Plaintiff was not entitled to benefits under the Social Security Act.   (T at 16-42). The ALJ's decision became the Commissioner's final decision on February 17, 2012, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On April 19, 2012, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on July 9, 2012. (Docket No. 9).

Plaintiff filed a motion for summary judgment on April 8, 2013. (Docket No. 22).  The Commissioner moved for summary judgment on May 17, 2013. (Docket No. 23).  Plaintiff filed a reply memorandum of law in further support of her motion on May 31, 2013. (Docket No. 24).

For the reasons set forth below, this Court recommends that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be closed.

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

1    **C.    Commissioner's Decision**

2           The ALJ found that Plaintiff had not engaged in substantial gainful activity

3    since February 1, 2000, the alleged onset date, and met the insured status

4    requirements of the Social Security Act through March 31, 2007. (T at 21-22). The

5    ALJ determined that Plaintiff's depressive disorder (not otherwise specified),

6    anxiety reaction, polysubstance dependence, and possible headaches were

7    impairments considered "severe" under the Act. (Tr. 22-24).  The ALJ found that

8    Plaintiff's impairments, including substance abuse, met the impairments set forth in

9    Sections 12.04, 12.06, and 12.09 of the Listings. (T at 24-25).

10          The ALJ determined that even if Plaintiff stopped her substance abuse, her

11   remaining limitations would have more than a minimal impact on her ability to

12   perform basic work activities. (T at 25).  However, the ALJ concluded that if

13   Plaintiff stopped her substance abuse, she would not have an impairment or

14   combination of impairments that met or medically equaled one of the impairments in

15   the Listings. (T at 25-26).  The ALJ further found that if Plaintiff stopped her

16   substance abuse, she would have the residual functional capacity ("RFC") to

17   perform a full range of work at all exertional levels, with the following

18   nonexertional limitations: she would be limited to simple repetitive tasks, with some

19   complex tasks; her interaction with the general public would need to be limited to

20

minimal superficial contact; and interaction with coworkers and supervisors would need to be limited to casual (non-cooperative) interaction. (T at 27-34).

At step four of the sequential evaluation, the ALJ found that Plaintiff could perform her past relevant work as a warehouse worker if she stopped her substance abuse. (T at 34).

Accordingly, the ALJ concluded that Plaintiff would not be disabled if she stopped her substance abuse and, as such, her substance abuse was a contributing factor material to the determination of disability. Thus, the ALJ found that Plaintiff was not entitled to benefits at any time from the alleged onset date through November 2, 2010, the date of the ALJ's decision. (T at 34-35). As noted above, the ALJ's decision became the Commissioner's final decision on February 17, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) main arguments in support of this position. First, Plaintiff asserts that the ALJ did not properly assess the opinions of her treating physician and lay witness statements. Second, Plaintiff challenges the ALJ's substance abuse determination. Third, she argues that the ALJ's step four (past relevant work) analysis was flawed. This Court will address each argument in turn.

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

# IV. ANALYSIS

## A.    Treating Physician and Lay Opinions

### 1.    Dr. Johnson

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

In June of 2009, Dr. Rodney J. Johnson, a treating physician, completed a medical report, in which he diagnosed Plaintiff as suffering from migraines and explained that she experienced "classic migraine patterns," with light and sound sensitivity, nausea, and vomiting. (T at 1154). Dr. Johnson opined that Plaintiff would need to lie down several hours a day at least half of the days of each month. (T at 1154). He also noted that Plaintiff experiences depression as a result of her migraine symptoms. (T at 1154). He opined that Plaintiff could likely miss 4 or

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

more days of work each month due to frequent headaches. (T at 1155).  Dr. Johnson reiterated these limitations in a medical report completed in March of 2010. (T at 1191-92).

The ALJ assigned Dr. Johnson's opinions no weight, finding them based solely on Plaintiff's subjective complaints, which the ALJ found not credible. (T at 32).  This Court finds that ALJ's decision supported by substantial evidence and consistent with applicable law.

The ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  Moreover, the lack of medical support for an opinion based substantially on a claimant's subjective complaints is a legitimate reason for discounting a treating physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).  In particular, it is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the ALJ discounted Plaintiff's credibility, noting a significant history of over-reporting of symptoms and drug-seeking behavior. (T at 27-34). The record

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

contains substantial evidence to support this conclusion, as well as the ALJ's decision to discount Dr. Johnson's highly restrictive findings.

Plaintiff treated with Dr. Gerard Zanolli, a psychiatrist, from August of 2003 to December of 2004, when Dr. Zanolli terminated the relationship, finding that Plaintiff "would not benefit from continued treatment." (T at 726).

Dr. Johnson's initial evaluation in 2006 indicated normal physical, mental, and neurological examinations. (T at 959-60).  Dr. Johnson's treatment notes describe frequent complaints of headaches, but also document Dr. Johnson's refusal to prescribe more pain medication despite Plaintiff's request (T at 1185), the doctor's repeated finding that Plaintiff's objective examination was "grossly normal" (T at 1187, 1188, 1190), and his conclusion that "the psychology of pain" was a "big part of the problem." (T at 1188).

In November of 2006, Robert G. Merkel, a physician's assistant and Plaintiff's primary care provider at the time, reported that Plaintiff had "no significant physical impairments," but felt that "her chaotic lifestyle and fragile emotional state [made] it unlikely that she [would] be able to enter the work force at any meaningful basis in the near future." (T at 868).  However, Mr. Merkel opined that Plaintiff could return to work if her life circumstances and situation changed. (T at 867).  Mr. Merkel believed that Plaintiff "[did] not want to return to the work

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

1  force" and noted that she had "been seeking disability since I have known here." (T

2  at 867).   Mr. Merkel questioned "whether even under perfect circumstances

3  [Plaintiff] would pursue work . . . ." (T at 867).

4          Dr. Jay Toews, a psychologist, performed a consultative examination in

5  February of 2007.   Dr. Toews found it "difficult to tease apart complaints of

6  migraines from bipolar symptoms." (T at 686).   He noted medical records describing

7  Plaintiff as engaging in drug-seeking behavior. (T at 686).   Plaintiff told Dr. Toews

8  that she was fully independent for basic self-care, with a "full complement of

9  independent living skills," which included caring for her young daughter. (T at 688).

10  Dr. Toews described Plaintiff as friendly and cooperative during the interview, with

11  good judgment and insight. (T at 688).   Psychological testing indicated "relatively

12  good auditory attention, concentration, and acquisition," although Dr. Toews noted

13  that a headache could interfere with recall and retrieval. (T at 689).

14          Dr. Toews found that Plaintiff's evaluation was consistent with a person who

15  may have "some difficulties with prolonged attention, concentration, and

16  remembering," but described Plaintiff as "somewhat histrionic." (T at 689).   He

17  opined that Plaintiff's depression and anxiety "would not be barriers to

18  employability." (T at 689).   He believed it was "doubtful" that Plaintiff had bipolar

19  disorder. (T at 690).   Dr. Toews noted that Plaintiff's ability to work on a sustained

20

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

1   basis was related to the frequency and duration of her migraines. (T at 690).  He

2   assigned a Global Assessment of Functioning ("GAF")[2] score of 60 (T at 690),

3   which is indicative of moderate symptoms or difficulty in social, occupational or

4   education functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297,

5   at *19 n.2 (E.D.Wa Jan. 7, 2013).

6       In March of 2007, Mr. Merkel reported that Plaintiff was requesting a pain

7   medication shot, even though she had received multiple shots without seeking

8   ongoing preventative health care. (T at 812).  Mr. Merkel refused, explaining that he

9   was not going "to enable the patient any longer" and finding that she "had not been

10  proactive in trying to find prophylactic therapy . . . ." (T at 812).

11      In July of 2007, Plaintiff reported that she flushed her medications down the

12  toilet during an alleged "manic episode" and then experienced "massive headaches."

13  (T at 800).  Mr. Merkel questioned whether this was an attempted "sabotage,"

14  designed to obtain a higher dosage of pain medication. (T at 800).

15      An August 2007 treatment note from Dr. Samuel Schneider described Plaintiff

16  as "off all narcotics" and "feeling ok." (T at 900).  In September of 2007, Plaintiff

17  was referred to Dr. Paul Schmitt after an emergency room physician declined her

18  [2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational
19  functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161,
    1164 n.2 (9th Cir. 1998).

20              14

       REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

request for additional narcotics. (T at 906).  After consulting with Mr. Merkel (who was described as Plaintiff's primary care provider), Dr. Schmitt declined to give Plaintiff additional pain medication.  (T at 906).  He reported that Plaintiff was "unhappy with that decision but reluctantly left." (T at 906).

In January of 2008, Mr. Merkel reported that Plaintiff was taking clonazepam, despite his instructions to discontinue that medication. (T at 922).  She demanded a refill of clonazepam and threatened to terminate her treating relationship with Mr. Merkel and "go to the hospital" if it was not provided. (T at 922-23).  Mr. Merkel refused to provide any further controlled substances and decided to terminate Plaintiff as a patient. (T at 923-24).

In September of 2008, Dr. Jerry Gardner, a non-examining State Agency review consultant, concluded that Plaintiff would be capable of simple, repetitive tasks if she stopped abusing narcotics, but would do better in smaller groups. (T at 1137).  During that same month, Dr. Jacqueline Farwell, another non-examining State Agency review consultant, found that Plaintiff had no exertional limitations, but with some postural and environment limitations. (T at 1144-47).

CT scans of Plaintiff's head in February of 2008 and January of 2009 were unremarkable. (T at 1260, 1297).

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

In early January of 2010, Plaintiff presented to the emergency room at Good Samaritan Hospital twice in three days for treatment of her migraine headaches.  Dr. Michael Regaldo, the emergency room physician, expressed concern about Plaintiff's visits and described her behavior as "somewhat suspicious . . . ." (T at 1174-75).  Dr. Regaldo declined to provide any further opioids on Plaintiff's second visit. (T at 1175).  Plaintiff saw Dr. Johnson shortly thereafter and requested more pain medication, which Dr. Johnson refused to provide. (T at 1186).

Dr. Arshad Zaidi, a psychiatrist, performed a psychiatric/medication evaluation in March of 2010.  Plaintiff's primary complaint was anxiety. (T at 1182). Dr. Zaidi described Plaintiff as trying to avoid probing questions, particularly with regard to her use of drugs and alcohol. (T at 1182).  In fact, Dr. Zaidi found Plaintiff "evasive" about her history of substance abuse. (T at 1183).  He assigned a GAF score range of 65-69 (T at 1184), which is indicative of mild symptoms. *See Wright v. Astrue*, CV-09-164, 2010 U.S. Dist. LEXIS 53737, at *27 n. 7 (E.D. Wa. June 2, 2010).

Later that month, Noel Jones, a social worker, suggested that Plaintiff be placed on "alert" due to her drug-seeking behavior. (T at 1180).

Dr. Miriam Martin, a psychological expert, reviewed Plaintiff's records and testified at the administrative hearing that, without substance abuse, Plaintiff would

16

have no limitation as to activities of daily living, mild social limitations, and mild to moderate limitations with respect to concentration, persistence, and pace. (T at 66-67).

In sum, there was sufficient evidence (as outlined above) to support the ALJ's decision to discount Plaintiff's subjective complaints and then to discount Dr. Johnson's opinions, which were based primarily upon on those complaints.  Plaintiff argues that the records documenting her frequent treatment for migraine headaches provide objective evidence supporting Dr. Johnson's assessment, which (she contends) should have been accepted as controlling.  However, the ALJ found that Plaintiff's frequent treatment was largely a function of exaggerated complaints in service of drug-seeking behavior.

Plaintiff argues that the ALJ should have weighed the evidence differently and resolved the conflict in favor of Dr. Johnson's assessments, but it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's finding was supported by substantial evidence and should be sustained.

2.      *Lay Opinions*

The ALJ is obliged to consider observations by nonmedical (lay) sources as to how a claimant's impairments affect his or her ability to work. *See* 20 CFR § 404.1513 (d)(4); SSR 88-13.  If the statements of lay witnesses are discounted, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff submitted several statements from lay witnesses.  In a letter dated August 13, 2010, Janie Allen, who described herself as Plaintiff's friend, explained that Plaintiff's quality of life was "severely diminished" by her chronic migraine condition and mental health issues. (T at 328).  Ms. Allen assisted Plaintiff with panic attacks, migraines, and missed appointments. (T at 328).

In an undated letter, Plaintiff's daughter stated that her mother has debilitating headaches every 3 or 4 days. She also explained that her mother is moody and depressed as a result of bipolar disorder. (T at 329).

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

Bradley Palmer, Plaintiff's boyfriend, also provided an undated letter, in which he described severe migraine symptoms, extreme depression, mood swings, and suicide attempts. (T at 330).

The ALJ gave these statements little weight, finding them unsupported by the objective medical record. (T at 34). The Commissioner concedes that it was error for the ALJ to reject the lay statements on this basis. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)("The rejection of the testimony of [claimant's] family members because [the] medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records.").

However, this Court finds the error to be harmless. Where, as here, the ALJ reasonably discounted the claimant's credibility, the ALJ make likewise discount lay witness statements that are similar to the claimant's complaints. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009)("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant]'s own subjective complaints, and because [lay witness]'s testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). The ALJ's failure to cite this rationale in support of his decision is not dispositive and may be considered harmless error.

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

As the Ninth Circuit explained in *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012), "[w]here lay witness testimony does not describe any limitations not already described by the claimant, the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, [and] it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *See also Loper v. Colvin*, No. 13-CV-117, 2014 U.S. Dist. LEXIS 11087, at *15-16 (E.D.Wa. Jan. 29, 2014)(finding that the ALJ's "[e]rror if any [was] clearly harmless because the lay testimony [was] merely cumulative to the claimant's properly discounted subjective complaints. In such circumstances the ALJ was not required to discuss the lay testimony specifically.").

Here, the lay testimony was consistent with Plaintiff's subjective reports – she complained of severe migraines and mental health problems and frequently sought treatment (mainly in the form of prescription pain medication) for those issues, both from her primary care providers and via visits to the emergency room.  The ALJ concluded that these subjective complaints and treatment efforts were exaggerated and part of an effort to obtain narcotics.  As set forth above, the ALJ's conclusion is supported by substantial evidence.  Accordingly, under the Ninth Circuit precedent

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

1   cited above, the ALJ's error with regard to the lay witness statements was harmless

2   and does not provide a basis for overturning the Commissioner's decision.

3   **B.    Substance Abuse**

4         When a Social Security disability claim involves substance abuse, the ALJ

5   must first conduct the general five-step sequential evaluation without determining

6   the impact of substance abuse on the claimant. If the ALJ finds that the claimant is

7   not disabled, then the ALJ proceeds no further.  If, however, the ALJ finds that the

8   claimant is disabled, then the ALJ conducts the sequential evaluation and second

9   time and considers whether the claimant would still be disabled absent the substance

10  abuse.  *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR §

11  404.1535.

12        The claimant bears the burden at steps 1-4 of the second sequential analysis of

13  showing substance abuse is not a "contributing factor material to his disability."

14  *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1177 (E.D.Wa. 2011)(citing *Parra v.*

15  *Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).  To meet this burden, the claimant "must

16  provide competent evidence of a period of abstinence and medical source opinions

17  relating to that period sufficient to establish [that substance abuse] is not a

18  contributing factor material to [the] alleged mental impairments and disability."

19  *Hardwick*, 782 F. Supp. 2d at 1177 (citing *Parra*, 481 F.3d at 748-49).

20

In this case, the ALJ found that Plaintiff's impairments, including substance abuse, met several of the impairments set forth in the Listings (§§12.04, 12.06, and 12.09) and she was therefore disabled. (T at 24).  However, the ALJ concluded that Plaintiff's impairments would not meet the Listings if she stopped abusing narcotics and, further, that Plaintiff would be able to perform her past relevant work if the substance abuse ended. (T at 25, 34).  Thus, because the ALJ determined that Plaintiff would not be disabled if she stopped the substance abuse, the abuse was a contributing factor material to the determination of disability and based on that determination, found Plaintiff not to be entitled to benefits. (T at 34).

Plaintiff challenges these findings, citing evidence that her mental health symptoms persisted even when she stopped abusing drugs.  In addition, Plaintiff notes that Dr. Martin, the psychological expert, expressed hesitancy during the administrative hearing about her ability to project Plaintiff's limitations in the absence of substance abuse.  Under such circumstances, Plaintiff argues that she should have been given the benefit of the doubt.

This Court finds that the ALJ's assessment was supported by substantial evidence and should be sustained.  As to Plaintiff's first argument, the ALJ agreed that Plaintiff would continue to have migraines and mental health symptoms if she stopped her substance abuse and incorporated non-exertional limitations arising

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

from those conditions into the RFC determination. (T at 26).  As to the second argument, Dr. Martin did acknowledge that the issue of whether substance abuse was a contributing factor material to the disability determination was a "difficult question to answer." (T at 61).  She explained that Plaintiff was in a "vicious cycle" of symptoms and substance dependence. (T at 61-62).

However, Dr. Martin was ultimately able to render an opinion, finding that, without substance abuse, Plaintiff would have no limitation as to activities of daily living, mild social limitations, and mild to moderate limitations with respect to concentration, persistence, and pace. (T at 66-67).  Dr. Martin found that Plaintiff had much more significant limitations (moderate as to activities of daily living, marked social limitation, and marked concentration, persistence, and pace limitations) when she was abusing narcotics. (T at 67).  The ALJ reasonably relied on Dr. Martin's assessment, which, combined with the other evidence outlined above, provided substantial evidence in support of the ALJ's conclusion that Plaintiff's substance abuse was a contributing factor material to the disability determination. *See Moody v. Astrue*, No. CV-10-161, 2011 U.S. Dist. LEXIS 125165, at *22-23 (E.D.Wa. Oct. 28, 2011).

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

**C.    Past Relevant Work**

At step four of the sequential evaluation, the ALJ makes a determination regarding the claimant's residual functional capacity and determines whether the claimant can perform his or her past relevant work. "Past relevant work" is work that was "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a).

Although claimant bears the burden of proof at this stage of the evaluation, the ALJ must make factual findings to support his or her conclusion. *See* SSR 82-62. In particular, the ALJ must compare the claimant's RFC with the physical and mental demands of the past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). In sum, the ALJ must determine whether the claimant's RFC would permit a return to his or her past job or occupation. The ALJ's findings with respect to RFC and the demands of the past relevant work must be based on evidence in the record. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

Here, the ALJ concluded that if Plaintiff stopped her substance abuse, she would retain the RFC to perform her past relevant work as a warehouse worker. (T at 34). This Court finds no error as to this aspect of the ALJ's decision. The RFC determination was supported by substantial evidence (namely, the evidence outlined in Section IV.A.1 above). The ALJ relied on the testimony of Deborah Nelson

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

Lapoint, a vocational expert, who testified that Plaintiff's past relevant work as a warehouse worker was unskilled and required the ability to perform "medium work." (T at 93). Ms. Lapoint opined that a person with no exertional limitations, but limited to simple, repetitive tasks and some complex tasks, with minimal or superficial contact with coworkers and supervisors, would be able to perform the occupation of warehouse worker. (T at 93-94). The ALJ reasonably relied on this testimony in support of her step four findings, which were supported by substantial evidence and should therefore be sustained. *See Meeker v. Astrue*, No. CV-08-039, 2010 U.S. Dist. LEXIS 662, at *39-40 (E.D.Wa. Jan. 5, 2010)(finding ALJ's reliance on vocational expert's description of past relevant work appropriate and supported by substantial evidence).

## V. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

weight when rendering a decision that Plaintiff is not entitled to benefits. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment be DENIED.

Accordingly, **IT IS HEREBY RECOMMENDED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 22**, be **denied;**

Commissioner's motion for summary judgment, **Docket No. 23**, be **granted**; and that this case be closed with a judgment in favor of the Commissioner.

The District Court Executive is directed to enter this Report and Recommendation and provide a copy to counsel and to the referring judge.

## VI. OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file with the District Court Executive all written objections, specifically identifying the portions to which objection is being made, and the basis therefor. Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB

1    A district judge will make a *de novo* determination of those portions to which

2  objection is made and may accept, reject, or modify the magistrate judge's

3  determination. The district judge need not conduct a new hearing or hear arguments

4  and may consider the magistrate judge's record and make an independent

5  determination thereon. The district judge may also receive further evidence or

6  recommit the matter to the magistrate judge with instructions. See 28 U.S.C.§

7  636(b)(1)(B) and 8, Fed. R. Civ. P. 73, and LMR 4, Local Rules for the Eastern

8  District of Washington. This magistrate judge's recommendation cannot be appealed

9  to the Ninth Circuit Court of Appeals; only the district judge's final order or

10  judgment can be appealed.

11

12    DATED this 27th day of February, 2014.

13

14    /s/Victor E. Bianchini
         VICTOR E. BIANCHINI
15    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

REPORT AND RECOMMENDATION – NICHOLS v COLVIN 12-CV-03057-VEB